UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RUDY LOPEZ, on behalf of himself and all others similarly situated, | : : | |
| | : | Case No. 3:21-cv-61 |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | |
| SILFEX, INC., | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING, WITHOUT PREJUDICE TO REFILING, THE PARTIES' "JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE" (DOC. NO. 17)**

---

This matter is before the Court on the parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal With Prejudice (Doc. No. 17) (the "Motion"). Plaintiff, Rudy Lopez ("Named Plaintiff"), filed this action as a collective action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), as well as a class action alleging violations of the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03 ("OMFWSA"). (*See* Doc. No. 1.) In the Motion, the parties "move this Court to approve the proposed FLSA opt-in Settlement reached by the parties and memorialized in the" proposed written settlement agreement (that is attached to the Motion) by "entering the proposed Order of Dismissal and Approving Settlement." (Doc. No. 17 at PageID 64, 82.)

While the Court commends the parties for their efforts to resolve this matter, the Court will not grant the Motion. The Court would welcome a revised motion with modified procedures and relatively minor revisions to the proposed settlement documents, in line with this order. As explained below, although the proposed settlement reflects a fair and reasonable resolution of a

1

bona fide dispute, there are some defects in the proposed procedures for fulfilling the requirements of a collective action, maintaining confidentiality, providing notice to prospective opt-in plaintiffs, and dismissing the action. Due to the defects, the Court also will not make any findings concerning the proposed service payment to Named Plaintiff or the proposed award of attorneys' fees. For the reasons discussed below, the Court **DENIES** the Motion, without prejudice to refiling.

## I.      <u>BACKGROUND</u>

On February 23, 2021, the Named Plaintiff (Lopez), on behalf of himself and all others similarly situated, filed Plaintiff's Class and Collective Action Complaint (the "Complaint") against Defendant, Silfex, Inc. ("Silfex"). (Doc. No. 1.) The Complaint alleges that Silfex unlawfully failed to include in the calculation of overtime compensation to Named Plaintiff and other similarly situated Silfex manufacturing employees (1) shift differentials earned by them, and (2) bonuses earned by them. (*Id*.) Silfex filed an Answer in response to the Complaint, denying these allegations, asserting several affirmative defenses, and maintaining that Named Plaintiff and the individuals he purports to represent were properly compensated at all times. (Doc. No. 11.)

On February 26, 2021, counsel for Plaintiff filed a Notice of Filing Consent Forms, in which Named Plaintiff and another individual (Clayton Dunwoodie) signed written consent forms to become party plaintiffs in this action. (Doc. Nos. 3, 3-1, 3-2.) On April 5, 2021, counsel for Plaintiff filed a Notice of Filing Consent to Join Form Pursuant to 29 U.S.C. § 216(b) that shows another individual (Gregory Plantz) signed a written consent form to opt-in to become a plaintiff in this action. (Doc. Nos. 8, 8-1.) Thus, in addition to the Named Plaintiff, two individuals have opted into the action. The Court will refer to those three individuals as the "Current Opt-ins," which is how they are referred to in the proposed Settlement Agreement. (*See* Doc. No. 17-1 at PageID 84.)

Between April 2021 and September 2021, the Parties engaged in an informal, yet comprehensive, exchange of information and discussions regarding the parties' claims and defenses—including Silfex providing time and pay documentation to Plaintiff's counsel. (Doc. No. 17-5 at PageID 113-14.) This also included identifying individuals who may be similarly situated to Named Plaintiff (i.e., former and current hourly non-exempt manufacturing employees of Silfex who were paid a shift premium and/or overtime eligible bonus between a specified period of time), as well as calculating alleged overtime damages for those identified individuals and the Current Opt-ins (together, the "Eligible Settlement Participants"). (*Id.*) The parties state that there are 845 Eligible Settlement Participants. (Doc. No. 17 at PageID 67.) On September 16, 2021, the parties attended a full-day mediation with an experienced, independent mediator who had previously served as a state court judge in Ohio. (Doc. No. 16; Doc. No. 17-5 at PageID 113.) The parties came to an agreement for resolving this action on the day of the mediation, and they began drafting what would become the Motion. (*Id.*) Silfex continues to deny liability and maintains that Named Plaintiff and any similarly situated employees were properly compensated at all times. (Doc. No. 17 at PageID 64.)

On October 21, 2021, the parties filed the Motion. (Doc. No. 17.) Attached to the Motion are several documents that the parties identify as "[t]he settlement documents submitted for approval or entry by the Court": (1) Class Settlement Agreement and Release; (2) Individual Settlement Agreement and Release [regarding Named Plaintiff]; (3) Notice of Settlement of Lawsuit, with attached Consent and Release Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims; (4) Order of Dismissal and Approving Settlement; (5) Declaration of Counsel Chastity L. Christy; and (6) Declaration of Counsel Shannon M. Draher. (Doc. Nos. 17, 17-1, 17-2, 17-3, 17-4, 17-5, and 17-6.) The Motion states that the parties "move this Court to approve the

proposed FLSA opt-in Settlement reached by the Parties" and that "the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members." (Doc. No. 17 at PageID 64-65 (emphasis in original).) Therefore, and also based on corresponding allegations in the Complaint, the Court does not consider the proposed settlement to be a class action settlement, but instead to be a collective action settlement and will analyze the proposed settlement accordingly.

The proposed settlement provides for a settlement fund amount from which a service payment would be made to Named Plaintiff, an award of attorneys' fees and expenses would be made to Plaintiff's counsel, and payments would be made to those persons who opt into the action. (Doc. No. 17-1.) The Motion states that, if approved by the Court, the settlement will cover the Current Opt-ins (including Named Plaintiff) and all of the Eligible Settlement Participants who elect to participate in the settlement by signing and returning consent and release forms (collectively referred to as the "Qualified Claimants"). (Doc. No. 17 at PageID 67-68.) The parties explain that the proposed individual payments to each Qualified Claimant have been calculated by the parties' counsel based on each Qualified Claimant's alleged overtime damages. (*Id.*) However, this case has not been conditionally certified or certified as either a collective action or a class action.

## II. OVERARCHING LEGAL STANDARDS FOR ASSESSING A PROPOSED SETTLEMENT OF A FLSA COLLECTIVE ACTION

The principal purpose of the FLSA is to protect all covered workers against "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being." 29 U.S.C. § 202(a). This includes protecting such workers "from substandard wages and oppressive working hours" so that each "receive[s] a fair day's pay

for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotation marks omitted).

FLSA claims may be brought individually or as a representative action. 29 U.S.C. § 216(b). Specifically, Section 216(b) of the FLSA permits one or more employees to recover unpaid minimum wages or unpaid overtime compensation (as well as liquidated damages) by suing an employer for and on "behalf of himself or themselves and other employees similarly situated." *Id.* There are "two requirements for a representative action" under this section: (1) all plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "Similarly situated persons are permitted to 'opt into' the suit," which is called a "collective action." *Id.* Although there are similarities between collective actions and class actions, a collective action's "opt-in" approach "is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23." *Id.*

Regarding settlement of FLSA collective actions, "[a]lthough the Sixth Circuit has never definitively answered the question of whether court approval is required for FLSA settlement agreements, district courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Athan v. U.S. Steel Corp.*, 523 F. Supp. 3d 960, 964-65 (E.D. Mich. 2021) (collecting cases); *see also Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) (acknowledging a circuit split regarding whether Supreme Court precedent requires "judicial approval of *all* FLSA settlements") (emphasis in original). Congress made the FLSA's provisions mandatory and, except in two narrow circumstances, they are generally not subject to bargaining, waiver, or modification by contract or settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945);

5

*Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CV 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *2-3 (E.D. Ky. Oct. 23, 2008). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Food Stores*, 679 F.2d at 1353. The second exception (which may apply to this case) is that "a stipulated judgment [may be] entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355.

Therefore, in reviewing a settlement proposed by the parties in a suit brought by employees under the FLSA against their employer, a district court must determine whether the proposed settlement represents a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355; *Athan*, 523 F. Supp. 3d at 965 ("[b]efore this Court can approve the settlement of Plaintiff's FLSA claim, the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented") (internal quotation marks omitted). Additionally, a district court must ensure that the proposed procedures for effectuating the proposed settlement are proper. *See, e.g., O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-2378, 2020 U.S. Dist. LEXIS 138599, 2020 WL 4493157, at *9-15 (W.D. Tenn. Aug. 4, 2020) ("*O'Bryant I*") (analyzing, among other things, whether the plaintiffs and prospective opt-in plaintiffs were similarly situated, the proposed settlement's procedures for opting-in and providing notice, and the parties' request for dismissal of the action). If the requirements are met and the procedures are proper, then the court may approve the settlement to "promote the policy of encouraging settlement of litigation." *Crawford*, 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores*, 679 F.2d at 1353).

### III.  <u>ANALYSIS</u>

As indicated above, the Motion asks the Court to simultaneously approve the parties'

proposed opt-in settlement and enter an "Order of Dismissal and Approving Settlement" (Doc. No. 17-4).  (*See* Doc. No. 17.)  The parties argue that the proposed settlement (1) will resolve bona fide disputes involving overtime compensation claims under the FLSA and OMFWSA; (2) is fair and reasonable; and (3) satisfies the criteria for approval under § 216(b) of the FLSA."  (*Id.* at PageID 64-65.)

The Court finds that, while the proposed settlement reflects a fair and reasonable resolution of a bona fide dispute, it cannot grant the Motion because of defects in the proposed procedures for fulfilling the requirements of a collective action, maintaining confidentiality, providing notice to prospective opt-in plaintiffs, and dismissing the action.  Additionally, due to those defects and the resulting continuation of this action, the Court will not make any findings regarding the proposed service award to Named Plaintiff or the proposed award of attorneys' fees and costs, but sets forth some overarching principles in anticipation of a subsequent motion seeking such awards.

### A.  <u>Bona Fide Dispute</u>

As stated above, one requirement for approving a proposed FLSA settlement is finding that the parties are engaged in a bona fide dispute.  *Lynn's Food Stores*, 679 F.2d at 1355; *Athan*, 523 F. Supp. 3d at 965.  "A bona fide dispute exists when there are legitimate questions about the existence and extent of [the] [d]efendant's FLSA liability."  *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks omitted); *see also Lynn's Food Stores*, 679 F.2d at 1354 (there must be "issues, such as FLSA coverage or computation of back wages, that are actually in dispute").  Thus, there must be some doubt that the plaintiff-employee(s) would succeed on the merits through litigation of the FLSA claims.  *Selk*, 159 F. Supp. 3d at 1172 (finding bona fide dispute, such that employees were "not clearly entitled to the compensation they seek," where the parties disputed whether the employer's practice of "rounding employees' work time to the nearest quarter hour" undercompensated the employees);

*Crawford*, 2008 WL 4724499, at 4 (finding bona fide disputes as to whether plaintiffs were exempt employees, whether plaintiffs would be entitled to liquidated damages, and concerning defendants' defenses against liability). This inquiry seeks to avoid a situation where parties negotiate around the FLSA's requirements concerning wages and overtime or otherwise manipulate the settlement process to permit the employer to circumvent its obligations under the FLSA. *Selk*, 159 F. Supp. 3d at 1172; *O'Bryant I*, 2020 WL 4493157, at *7 ("[a] proposed settlement resolves a bona fide dispute when it reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching") (internal quotation marks omitted and alterations adopted).

The Court finds that this case reflects a bona fide dispute between the parties over potential liability under the FLSA, including whether a two-year or three-year statute of limitation applies, whether liquidated damages can be recovered, and whether certain bonuses were required to be included for purposes of calculating overtime compensation. (*See, e.g.,* Doc No. 1; Doc. No. 11; Doc. No. 17 at PageID 70; Doc. No. 17-5 at PageID 118.)

### B. <u>Fair and Reasonable Resolution</u>

As stated above, another requirement for approving a proposed FLSA settlement is finding that it is fair and reasonable. *Selk*, 159 F. Supp. 3d at 1172 ("[a]fter a district court is satisfied that a bona fide dispute exists, it must then determine whether the settlement is fair and reasonable"); *see also Lynn's Food Stores*, 679 F.2d at 1353 (before providing approval, a court must "scrutiniz[e] the settlement for fairness"). In making this determination, some courts have considered six factors in a totality of the circumstances approach.[1] *See, e.g., Selk*, 159 F. Supp. 3d

---

[1] Many district courts in this Circuit instead consider the seven-factor test used to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). *See, e.g., Athan*, 523 F.

at 1173 (formulating the six factors "[a]fter reviewing the relevant case law, and having considered the history and policy of the FLSA"); *Quintana v. HealthPlanOne LLC*, No. CV-18-02169-PHX-RM, 2019 U.S. Dist. LEXIS 124017, 2019 WL 3342339, at *2-5 (D. Ariz. July 25, 2019). More specifically, this Court will consider the following six factors in "determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Selk*, 159 F. Supp. 3d at 1173.

The parties provided a significant amount of information for the Court to consider in determining whether the proposed settlement is fair and reasonable with respect to the settlement proceeds. In considering the six factors identified above "under a totality of the circumstances approach, a district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Selk*, 159 F. Supp. 3d at 1173. Here, the Court is so satisfied and believes the that the proposed settlement is fair and reasonable apart

---

Supp. 3d at 965 ("courts consider, as applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement."); *see also Does 1-2 v. Déjà vu Servs., Inc.* 925 F.3d 886, 894-95 (6th Cir. 2019) (setting forth this seven-factor test in its review of a district court's approval of a class action settlement). The court in *Selk* explained that, while considering the class action factors is a "generally sound" approach, it "runs the risk of not giving due weight to the policy purposes behind the FLSA" and that "FLSA collective actions do not implicate the same due process concerns as class actions brought under Rule 23 because an employee who wishes to join a FLSA collective action must affirmatively 'opt-in' by filing a written consent to join the suit before she can be bound by the outcome." *Selk*, 159 F. Supp. 3d at 1173; *see also Crawford*, 2008 WL 4724499, at *2 (highlighting that the court's role in assessing a proposed settlement in a FLSA collective action "is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23, and derives from the special character of the substantive labor rights involved"); *Taylor v. Pilot Corp.*, 697 F. App'x 854, 857 (6th Cir. 2017) ("the FLSA says little about how collective actions should work" and "the collective action's substantive differences with a class action mean the process looks little like class certification under Rule 23"). This Court notes that the two approaches are not significantly different from each other; a number of the factors are similar. In this particular case, the Court's analysis would reach the same conclusions regardless of whether it applied the six-factor test from *Selk* or the seven-factor test used to assess whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e).

9

from the procedures to effectuate it (as explained below) and the proposed service payment and attorneys' fees (as to which the Court makes no findings at this time).

As to the first factor (the plaintiff's range of possible recovery), courts evaluate "the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174. "The settlement amount need not represent a specific percentage of the maximum possible recovery," but the court must be satisfied that, in comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, "the amount left on the settlement table is fair and reasonable under the circumstances presented." *Id.*; *see also Crawford*, 2008 WL 4724499 (approving proposed settlement despite finding that, "[g]iven the factual and legal complexity of the case, it is difficult to gauge the likelihood of the plaintiffs' success at trial"). The analysis may take into consideration "the possibility that plaintiffs would recover nothing." *Selk*, 159 F. Supp. 3d at 1175 (in finding the proposed settlement fair and reasonable, explaining that, "although the payouts to individual plaintiffs are small, the certainty of recovery helps prevent the additional damage that would befall plaintiffs if the case proceeds and is ultimately resolved against them"). Non-monetary relief may also be considered. *See, e.g., Crawford*, 2008 WL 4724499, at *7 (plaintiffs received "non-monetary relief in the form of important policy changes that could not have been achieved by a jury award of monetary damages").

Here, during the mediation, the parties were able to agree on the calculation of the proposed individual payments to each Eligible Settlement Participant. (Doc. No. 17 at PageID 74-75.) The parties calculated the proposed individual payments based on information exchanged between the parties and reasonable assumptions concerning various disputed issues that would affect the claims' value (without any admission by either party concerning those disputed issues). (*See, e.g.,*

10

Doc. No. 17 at PageID 73-76.)  While acknowledging the number of disputed issues, the proposed total overall recovery appears to represent a percentage above the overtime compensation likely to be owed over the relevant time period.  (*Id.*)  Although it is difficult to gauge the likelihood of plaintiffs' success at trial at this stage, the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims.  *Selk*, 159 F. Supp. 3d at 1174.  The factor leans in favor of finding the proposed settlement to be fair and reasonable.

As to the second factor (the stage of proceedings and amount of discovery completed), courts should "ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement."  *Selk*, 159 F. Supp. 3d at 1177.  "So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval."  *Id.* (factor favored approval of proposed settlement where some written discovery and depositions had taken place, allowing plaintiff's counsel to "closely analyze[] the time and wage records of each of the class members and calculate[] the amount of alleged unpaid wages accordingly," thus narrowing the issues and allowing adequate assessment of the likelihood of success at trial) (internal quotation marks omitted); *see also Athan*, 523 F. Supp. 3d at 967 (in approving settlement, commenting that the parties had "engaged in extensive pre-certification discovery in this matter—providing them a well-informed basis to evaluate their respective claims and defenses before deciding to compromise on resolution of this matter").

Here, although the parties have not proceeded with formal discovery, during the more than seven months prior to filing the Motion, the parties conducted extensive informal discovery and engaged in a lengthy mediation, which allowed them to exchange a wealth of information, argue various legal issues, and formulate an informed basis for evaluating their respective claims and defenses.  Plaintiff's counsel's investigation involved a review of payroll records, a review of

11

Silfex's incentive compensation and other policies, and an exchange of other records, which allowed counsel to identify potential similarly situated individuals and compute alleged damages for each of the Eligible Settlement Participants. (*See, e.g.,* Doc. No. 17-1 at PageID 84; Doc. No. 17-5 at PageID 113-16.) Additionally, prior to mediation, Silfex engaged an expert economist to prepare a detailed potential damages analysis. (Doc. No. 17-1 at PageID 84.) The factor also leans in favor of finding the proposed settlement to be fair and reasonable.

As to the third factor (the seriousness of the litigation risks faced by the parties), courts will weigh this factor in favor of approving a proposed settlement if "there is a significant risk that litigation might result in a lesser recovery for the class or no recovery at all." *Selk*, 159 F. Supp. 3d at 1175 (internal quotation marks omitted) (finding the factor weighed in favor of approving the proposed settlement where plaintiff's success on the FLSA "claim at trial is far from assured"). This factor may consider whether the settlement would provide plaintiffs with definite compensation now rather than waiting for an eventual resolution that would result in further expense without any definite benefit. *See id.*; *Athan*, 523 F. Supp. 3d at 967 (finding parties' settlement to be a reasonable means for the parties to minimize future time expended, risks, and litigation costs); *Crawford*, 2008 WL 4724499, at *6-7 ("by settling, the plaintiffs have avoided significant additional expenses," where the potential for a case of long duration was of concern to the parties).

Here, the risk of litigation and uncertainty of recovery supports a finding that the proposed settlement is fair and reasonable. Further litigation likely would require costly discovery, motion practice, pretrial conferences, and a potential trial—all involving related time and expense. *See Athan*, 523 F. Supp. 3d at 967. The proposed settlement would provide relief to the Qualified Claimants promptly and efficiently while taking advantage of the benefits of a collective action.

12

As explained above regarding the presence of a bona fide dispute, there are disputed issues of fact and law and success at trial for either party is not guaranteed.  The Court agrees with the parties that the litigation of the claims is uncertain in terms of duration, cost, and result.  (*See* Doc. No. 17 at PageID 71-72.)

As to the fourth factor (the scope of any release provision in the settlement agreement), "[a] settlement agreement that includes an overbroad release provision may be found unfair and unreasonable."  *O'Bryant I*, 2020 WL 4493157, at *14 (citing *Selk*, 159 F. Supp. 3d at 1178).  A release can be overbroad with respect to the scope of the claims released or with respect to the scope of persons included in the release (or both).

As to scope of the released claims, "when a FLSA settlement provides that opt-in members will receive unpaid wages and related damages, but nothing more, a release provision should be limited to the wage and hour claims at issue."  *Selk*, 159 F. Supp. 3d at 1178 (finding factor weighed in favor of approving settlement agreement where the "release provision generally tracks the wage and hour claims asserted in the lawsuit").  In short, the claims released need to "share a factual predicate with the claims pled in the complaint."  *O'Bryant I*, 2020 WL 4493157, at *15 (quoting *Does 1-2*, 925 F.3d at 900); *see also O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 19-cv-2378, 2020 U.S. Dist. LEXIS 240695, 2020 WL 7634780, at *11 (W.D. Tenn. Dec. 22, 2020) ("*O'Bryant II*") ("[t]he scope of the revised release is appropriate because 'the release specifically cabins the categories of relinquished claims to those based upon or reasonably related to the pleadings and claims asserted in the Settlement Agreement'") (quoting *Does 1-2*, 925 F.3d at 900).  "The concern is that an expansive release of claims would effectively allow employers to use employee wages—wages that are guaranteed by statute—as a bargaining chip to extract valuable concessions from employees."  *Selk*, 159 F. Supp. 3d at 1178; *see also O'Bryant I*, 2020 WL

13

4493157, at *14 (a court should not let an employer "use a settlement agreement to purchase a broad-based litigation shield in exchange for unpaid wages that class members are entitled to by statute") (internal quotation marks omitted).  However, "[c]ourts are less skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release."  *Selk*, 159 F. Supp. 3d at 1179 (approving separate release by the named plaintiff (only) where, although the release extended beyond the FLSA claims at issue to include any claim that the named plaintiff-employee may have against her defendant-employer, a separate release payment made only to the named plaintiff justified the broader release); *see also O'Bryant II*, 2020 WL 7634780, at *12 (approving general release that applied only to the named plaintiff and not to opt-in plaintiffs).

As to the scope of persons included in the release, only those who have opted into the action by filing their written consent with the court to become a party plaintiff can be bound by a release (or benefit from a settlement).  *See* 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *Barrentine*, 450 U.S. at 740; *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) ("[e]ven if the § 216(b) plaintiff can demonstrate that there are other plaintiffs 'similarly situated' to him … he has no right to represent them," and "[u]ntil such consent is given, no person will be bound by or may benefit from judgment").

Here, the proposed Settlement Agreement (Doc. No. 17-1) expressly covers only Named Plaintiff, current opt-in plaintiffs, and Qualified Claimants—those eligible settlement participants who timely return completed and executed Claim Forms and Releases.  (*See* Doc. No. 17 at PageID 73 ("The Eligible Settlement Participants are not bound by the settlement unless they affirmatively

14

opt-in and return the Consent and Release Form," so "any members who choose not to participate are free to do so without taking any action on their part"); Doc. No. 17-1 at PageID 85 (defining "Eligible Settlement Participants"), PageID 86 (defining "Qualified Claimants"), and PageID 91 (identifying those who would be releasing claims).) Critically, it does not cover employees who do not opt-in or persons who are not similarly situated. (*Id.*) Additionally, the scope of the claims released by the Qualified Claimants (apart from the Named Plaintiff) is limited to potential claims that would share a factual predicate with the claims pleaded in the Complaint and does not include a release of any claims unrelated to wage-and-hour laws (*see* Doc. No. 17-1 at PageID 91 and Doc. No. 17-3 at PageID 103-04). *Selk*, 159 F. Supp. 3d at 1178; *O'Bryant I*, 2020 WL 4493157, at *14-15. The proposed settlement agreement with Named Plaintiff (Doc. No. 17-2) contains its own, broader release provision. (*See* Doc. No. 17-2 at PageID 96 (generally releasing any claims relating to his employment with Silfex).) However, that release provision provides for Named Plaintiff to receive independent compensation from Silfex as consideration for that broader release. *Selk*, 159 F. Supp. 3d at 1179; *O'Bryant II*, 2020 WL 7634780, at *12. In sum, the fourth factor weighs in favor of finding the proposed settlement to be fair and reasonable.

As to the fifth factor (the experience and views of counsel and the opinion of participating plaintiffs), "the opinions of counsel should be given considerable weight" if counsel is familiar with the litigation and has previous experience with similar cases. *Selk*, 159 F. Supp. 3d at 1176 (internal quotation marks omitted) (finding factor weighed in favor of approval where the parties were represented by experienced litigators who found both the settlement proceeds and the scope of the release provisions to be fair and reasonable). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (internal quotation marks omitted). However, the court should consider

15

whether anything in the record calls into question the experience of counsel or raises doubt about counsel's judgment. *Id.* The opinion of participating plaintiffs should also be taken into consideration. *Id.*; *Athan*, 523 F. Supp. 3d at 968 (in approving proposed settlement, considering the class representatives' signature on the proposed agreement as indicating that they believed it was a fair and reasonable compromise of the disputed issues).

Here, the parties' counsel have extensive experience litigating claims under the FLSA, including claims for unpaid hours worked. (*See* Doc. No. 17 at PageID 70; Doc. No. 17-5; Doc. No. 17-6.) It is also apparent that counsel is familiar with this litigation. (*Id.*) Counsel believe that the proposed settlement is fair, reasonable, and adequate. (Doc. No. 17 at PageID 72; Doc. No. 17-5 at PageID 114; Doc. No. 17-6 at PageID 125-26.) Additionally, Named Plaintiff has been fully informed and involved in the settlement process and agrees to the proposed settlement. (Doc. No. 17 at PageID 72.) This factor weighs in favor of finding the proposed settlement to be fair and reasonable.

As to the sixth factor (the possibility of fraud or collusion), courts should look for evidence that the proposed settlement resulted from, or was influenced by, fraud or collusion. *Selk*, 159 F. Supp. 3d at 1179. "In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Crawford*, 2008 WL 4724499, at *6; *see also Selk*, 159 F. Supp. 3d at 1179 (finding factor weighing in favor of approving proposed settlement where "nothing on the face of the record" suggested counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation"). Courts may consider whether the proposed settlement payments to be received by opt-in members is based on an analysis of the employer's records and other information exchanged during formal or informal

discovery or whether the parties' settlement stemmed from mediation led by a neutral mediator. *See Selk*, 159 F. Supp. 3d at 1179; *Crawford*, 2008 WL 4724499, at \*6.

Here, there is no evidence of fraud or collusion in the parties' settlement. The parties reached an arms-length settlement, aided by mediation with an independent mediator, following an exchange of relevant records and information. *Athan*, 523 F. Supp. 3d at 966 (finding absence of fraud or collusion under similar circumstances). This factor weighs in favor of finding the proposed settlement to be fair and reasonable.

Balancing the factors, the Court concludes that—apart from the proposed service payment and proposed attorneys' fees award, to which the Court expresses no opinion at this time—the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA coverage. However, there are defects in the proposed procedures for effectuating the proposed settlement that prevent the Court from approving the settlement and granting the Motion.

### C. Proposed Procedures for Effectuating Settlement and Dismissing the Action

"District courts have broad discretion in implementing procedures to ensure that" the requirements of a viable FLSA collective action "are met." *O'Bryant I*, 2020 WL 4493157, at \*5. As referenced above, there are "two requirements for a representative action" under 29 U.S.C. § 216(b): (1) all plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer*, 454 F.3d at 546. Additionally, the "Court must assure that plaintiffs who decide to opt in are allowed to do so in 'an efficient and proper way' that is 'orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *O'Bryant I*, 2020 WL 4493157, at \*11 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989)). The Court finds that the Motion must be denied because the relief that it seeks presents problems with the procedures for effectuating the proposed settlement.

### 1) Similarly situated

The Court has not certified that any plaintiffs (or potential plaintiffs) are similarly situated. "Unlike class actions, in the collective action context, the term 'certify' is used when the court has determined that opt-in plaintiffs are similarly situated." *O'Bryant I*, 2020 WL 4493157, at *5. "For the Court to approve the settlement, the Court must find that all plaintiffs are similarly situated." *Id.*, at *9; *see also* 29 U.S.C. § 216(b). "The heart of [this inquiry] is whether the plaintiffs should be permitted to bring their claims of liability and damages as a group based on representative, rather than personal, evidence." *O'Bryant I*, 2020 WL 4493157, at *5 (quoting *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019)). In making the determination, courts consider "(1) the factual and employment settings of the individual plaintiffs, (2) the different defenses to which the plaintiffs may be subject, and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Pierce*, 922 F.3d at 745 (internal quotation marks omitted); *see also Taylor*, 697 F. App'x at 857 (noting that the FLSA never defines what it means to be similarly situated). A district court "can grant conditional certification to facilitate the process of providing notice to the" potential opt-in plaintiffs. *Parra v. Quality Controlled Concrete, LLC*, No. 1:13CV1113, 2015 U.S. Dist. LEXIS 194640, 2015 WL 12750445, at *3 (M.D.N.C. Mar. 11, 2015); *see also, e.g., Day v. Razban Enters., Inc.*, No. 1:19-cv-1170, 2019 U.S. Dist. LEXIS 236014, 2019 WL 11556857, at *1 (W.D. Tenn. Dec. 18, 2019) (finding that the proposed settlement "is both fair and reasonable" and granting collective action certification for the purpose of sending an approved notice to apprise the settlement collective members of the pendency of the action and their rights to participate); *O'Bryant I*, 2020 WL 4493157, at *9 ("[d]istrict courts in this Circuit have found opt-in plaintiffs similarly situated at the same time they have approved the settlement (i.e., in a one-step approval process)").

The Court construes the Motion as asking the Court to approve, for the purpose of

settlement, that the Named Plaintiff, the two persons who have filed written opt-in consent forms,

and the other "Eligible Settlement Participants" (as defined in the Settlement Agreement) are

similarly situated. It appears that, for settlement purposes, the parties have agreed on conditional

certification of those persons as being similarly situated. (*See* Doc. No. 17-1 at PageID 85 (Class

Settlement Agreement and Release at I. A and B).) Based on information provided regarding the

Eligible Settlement Participants, the claims, and Silfex's defenses, if the parties refile their motion

with acceptable, revised settlement documents (in accordance with the guidance below), then the

Court will find that the Eligible Settlement Participants are similarly situated and grant conditional

collective action certification for the purpose of sending notice to apprise the Eligible Settlement

Participants of the pendency of this action, the settlement, and their rights to participate.

### 2) **Proposed confidentiality**

The proposed settlement documents include confidentiality provisions. (*See* Doc. No. 17-

1 at PageID 91-92; Doc. No. 17-2 at PageID 96; Doc. No. 17-3 at PageID 104.) "Ordinarily,

settlement agreements are not judicial documents and may be kept confidential." *Camp v.

Marquee Constr., Inc.*, No. 2:18-cv-831, 2020 U.S. Dist. LEXIS 1365, 2020 WL 59517, at *1

(S.D. Ohio Jan. 6, 2020). "FLSA cases, however, are different." *Id.* As explained in *Camp*:

> Two reasons support public access to settlement agreements in FLSA cases. The
> first is the general public interest in the content of documents upon which a court's
> decision is based, including a determination of whether to approve a settlement.
> The second is the private-public character of employee rights under the FLSA,
> whereby the public has an independent interest in assuring that employees' wages
> are fair and thus do not endanger the national health and well-being. … [T]his
> Court and the majority of trial courts in this Circuit have held that there is a strong
> presumption in favor of public access to settlement agreements in FLSA cases and
> that a confidentiality provision contravenes the legislative purpose of the FLSA.
> Indeed, sealing FLSA settlement from public scrutiny could thwart the public's
> independent interest in assuring that employee's wages are fair. Absent an
> extraordinary reason, such settlement agreements should not be sealed. Trial courts
> determine whether a settlement may be kept confidential by balancing the parties'
> interests in confidentiality against this strong presumption.

*Id.* (internal citations and quotation marks omitted); *see also Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1031 (W.D. Tenn. 2016) ("[a] confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights") (internal quotation marks omitted); *Athan*, 523 F. Supp. 3d at 968-69 (explaining that "FLSA settlements are unlike typical settlement agreements reached between parties to a lawsuit, which are customarily confidential and which courts often do not even see, let alone formally approve," but allowing redaction of the specific dollar amounts of awards after balancing the public interest and parties' interests).

Here, it is unclear what the parties are proposing be kept confidential—particularly given that they publicly filed the proposed settlement documents. Additionally, the parties have provided no reason for confidentiality and have provided no legal authority to support confidentiality for any purpose. In the event that the parties refile a motion to approve a settlement, then either the confidentiality provisions must be removed from the proposed settlement documents or the parties must specify what it is that they propose be kept confidential, identify their interest(s) in keeping such information confidential, and provide legal support for keeping such information confidential.

### 3) Proposed notice to prospective opt-in plaintiffs

A "district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546. And, the Court has "broad discretion to approve and shape the procedures and the form and content of the notice and consent forms, including the scope of the applicable releases." *O'Bryant II*, 2020 WL 7634780, at *11 (citing *Hoffmann-La Roche*, 493 U.S. at 169).

Here, while the proposed notice generally does a satisfactory job of providing fair notice and other relevant information regarding this lawsuit to prospective opt-in plaintiffs, there are a few items that should be added or amended to receive the Court's approval if the parties refile the

motion to approve the proposed settlement. First, the proposed time frame for allowing prospective opt-in plaintiffs to opt into this action is too short. The parties propose limiting the opt-in period to 30 days after mailing of the notice. (Doc. No. 17-1 at PageID 86; Doc. No. 17-3 at PageID 101.) Under the circumstances, this time frame is unnecessarily short and insufficient to enable individuals interested in opting in to make an informed decision to do so. *Hoffmann-La Roche*, 493 U.S. at 170 (the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"). Extending the opt-in period from 30 days to 60 days would be more reasonable, while still moving the case along swiftly. Second, the notice should add language that specifies an easy way for each prospective opt-in plaintiff to find out the amount of money he or she would be receiving through the settlement. *See Parra*, 2015 WL 12750445, at *3 (identifying deficiencies in the proposed notice to prospective opt-in plaintiffs). Although the proposed notice includes a heading stating "How much will my payment be …," neither that question nor a clear or sufficient way to get an answer to that question is provided in the notice. Third, the notice should add information indicating the proposed incentive fee to be paid to Named Plaintiff. *Id.* Finally, the parties should verify that the language of the proposed notice corresponds with the case's procedural posture and requirements of this order. *Id.*

### 4)  Proposed dismissal of the action

Most significantly, there are problems with the parties' proposed timing of dismissal. In the Motion, "the Parties respectfully request that this Court approve the Agreement by entering the proposed Order of Dismissal and Approving Settlement" attached to the Motion. (Doc. No. 17 at PageID 82.) In other words, the parties are requesting that the Court dismiss the case before any additional opt-in plaintiffs—beyond the three Current Opt-Ins—receive notice of the settlement and decide whether to opt-in by filing written consent with the Court. And, they are

requesting simultaneous approval of a settlement on behalf of certain individuals (i.e., the prospective opt-in plaintiffs) who are not before the Court and dismissal of those individuals' claims with prejudice—prior to those individuals becoming a party to this case and making those claims. (*See* Doc. No. 17-4 at PageID 108 (portion of proposed order stating that "[t]he Court dismisses the claims of the Representative Plaintiff, Current Opt-in Plaintiffs, and Qualified Claimants, and enters final judgment dismissing them from the Action").)

The parties' proposed timing of dismissal does not correspond with the mandate in the FLSA that an employee who seeks to opt into the action file his or her written consent to do so "in the court in which such action is brought." 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"). Furthermore, "[u]nless a plaintiff has opted in by filing a written consent with the court, he or she is not bound by the results of the litigation" and may not directly benefit from it. *O'Bryant I*, 2020 WL 4493157, at *6; *see also* 29 U.S.C. § 216(b); *Cameron-Grant*, 347 F.3d at 1249 ("[u]ntil such consent is given, no person will be bound by or may benefit from judgment") (internal citation and quotation marks omitted). Conditional certification does not join additional parties to the action; employees become parties to a collective action only by filing written consent with the court. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

Thus, if the case were to be dismissed at this point, then the prospective opt-in plaintiffs would be unable to properly file their written consents to become parties to this action (and therefore could not be bound by or benefit from the results of the litigation). The parties' proposed timing of dismissal is contrary to "[t]he structure of the collective action provision of the FLSA— including the requirement that the opt-ins be filed—[which] is to ensure the presence of plaintiffs

22

before the court." *O'Bryant I*, 2020 WL 4493157, at \*10-11 (internal quotation marks omitted and alteration adopted) (denying motion for approval of a proposed settlement agreement because, under the terms of that agreement, "there is no procedure by which any consent by the Opt-In Plaintiffs will be filed with the Court"; explaining that "[t]he failure of the [proposed] Settlement Agreement to satisfy the statutory mandates of § 216(b) is fatal to its approval as to any plaintiffs who wish to opt into the litigation"); *see also Parra*, 2015 WL 12750445, at \*3 (explaining that the potential participants in the settlement need to be "given notice of the Settlement Agreement and a chance to 'opt in' before the case is dismissed"); *Douglas v. Allied Universal Sec. Servs.*, 381 F. Supp. 3d 239, 240 (E.D.N.Y. 2019) (the proposed settlement of the FLSA collective action "asks the Court to dismiss with prejudice the claims of collective members … before they opt in," but "[s]uch procedure[] [is] fundamentally at odds with the nature of collective action opt-in practices, which is to have the parties appear before the Court *prior* to final resolution) (emphasis in original). Therefore, the Court will not grant the Motion.[2]

The fact that the proposed order of dismissal (and proposed Settlement Agreement) attempts to allow the Court to retain jurisdiction over the action does not fix the problem.[3] *See O'Bryant I*, 2020 WL 4493157, at \*11-12 (explaining the "serious jurisdictional and justiciability

---

[2] The scenario here is like the one in *O'Bryant*. In that case, the district court declined to approve the proposed settlement because "[t]he parties ask the Court to approve the settlement on behalf of individuals who are not before the Court and to dismiss their claims with prejudice before they have appeared or had the opportunity to be heard." *O'Bryant I*, 2020 WL 44937157, at \*11. As explained by the *O'Bryant* court: "[t]hat is not an orderly, sensible, or proper way to resolve this case." *Id.* The parties in *O'Bryant* subsequently amended their proposed settlement, which the district court then approved. *O'Bryant II*, 2020 WL 7634780, at \*11 (explaining that "[t]he Court rejected the prior procedures because the Court would have dismissed the case before the collective's potential plaintiffs had opted-in," but the approved revised procedures "would dismiss the case only after all potential plaintiffs had opted-in and the settlement had received final approval"); *see also Parra*, 2015 WL 12750445, at \*3 (denying joint motion to dismiss and approve settlement of claims under the FLSA and expressing concern with the propriety of the proposed settlement procedure, but permitting the parties to amend and refile their motion and supporting documents—including notice of the proposed settlement agreement to the prospective opt-in plaintiffs).

[3] *See, e.g.,* Doc. No. 17-1 at PageID 94 ("Continuing Jurisdiction" provision in Settlement Agreement); Doc. No. 17-4 at PageID 108 (including language in proposed order that "[t]he Court retains jurisdiction over the Action to enforce the terms of the Settlement, including the notice administration, addition of Qualified Claimants, and the settlement distribution process").

issues" with the proposed settlement agreement, despite it including a continuing jurisdiction provision); *Parra*, 2015 WL 12750445, at *1 (finding that the court "cannot dismiss [named plaintiff's] claim and then retain jurisdiction to enforce the Settlement Agreement as to future plaintiffs who may choose to 'opt in' at a later date"). Similar to the situation presented in *O'Bryant*, the parties are "not asking the Court to retain jurisdiction only to enforce the terms of the settlement agreement," but "asking the Court to retain jurisdiction to assert jurisdiction over any party who desires to opt into the suit." *Id.*, at *12 (emphasis in original). "That power is quite remote from the purpose for which courts retain ancillary jurisdiction." *Id.* (internal quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-81 (1994)).

Therefore, in any subsequent motion for approval of the proposed settlement, the parties would at least need to: (1) remove any dismissal language from the motion's proposed order; (2) revise the proposed settlement agreement to include a provision regarding filing with the Court any written consents executed by prospective opt-in plaintiffs (as well as any necessary changes in the language regarding timing of payment) (*see* Doc. No. 17-1 at PageID 86 (paragraph III.A.5.)); and (3) revise the proposed settlement agreement's language to specify that the release would only be made by those who have opted into the action by filing a written consent with the Court (*see id.* at PageID 91 (paragraph IV.)).

### D. Proposed Service Payment and Proposed Award of Attorneys' Fees and Costs

As previously indicated, due to the defects discussed immediately above, the Court will not make any findings regarding the proposed service payment to Named Plaintiff or the proposed award of attorneys' fees and costs, but sets forth the following overarching principles in anticipation of a subsequent motion seeking such awards.

### 1) Service payment

The parties' proposed settlement provides for a service payment to Named Plaintiff. (*See* Doc. No. 17-1 at PageID 89.) Courts may allow a service payment (sometimes called an incentive payment, service award, or incentive award) to each named plaintiff in a collective action. *See, e.g., Athan*, 523 F. Supp. 3d at 966; *Selk*, 159 F. Supp. 3d at 1181 ("[a]t its discretion, a district court may award an incentive payment to the named plaintiffs in a FLSA collective action to compensate them for work done on behalf of the class"). "Such awards reflect the additional burdens of time, exposure, risk, and expense that these plaintiffs incurred during the course of the litigation." *Crawford*, 2008 WL 4724499, at *10 (approving additional compensation to the named plaintiff). For a court to approve such a payment, there should be no indication of any collusion or fraud. *Athan*, 523 F. Supp. 3d at 966 (finding that the requested flat fee service awards were "not indicative of any collusion or fraud given their relatively low amount and their proportionality to the overall recovery"). Additionally, courts should consider, among other things, the actions that the person(s) "has taken to protect the interest of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the [person(s)] expended in pursuing the litigation." *Selk*, 159 F. Supp. 3d at 1181. And, "[c]ourts will scrutinize large incentive payments to ensure that the prospect of a large incentive did not encourage [the person(s)] to accept a suboptimal settlement at the expense of the class members whose interests they are appointed to guard." *Id.* (internal quotation marks omitted and alterations adopted).

### 2) Attorneys' fees and costs

The parties' proposed settlement also provides for an award of attorneys' fees and costs. (*See* Doc. No. 17-1 at PageID 89-90.) Under 29 U.S.C. § 216(b), a prevailing plaintiff must be awarded attorney's fees, "but the amount of the award is within the discretion of the judge." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The Sixth Circuit has instructed that "[c]ourts

should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees [in FLSA cases] encourages the vindication of congressionally identified policies and rights." *Id.* at 1134-35; *see also Barrentine*, 450 U.S. at 740 n. 16 ("[t]o encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA, Congress has permitted individual employees to sue for back wages and liquidated damages and to receive reasonable attorney's fees and costs") (internal citation omitted).

Where a settlement agreement proposes an award of attorney's fees, such fees must be reasonable. 29 U.S.C. § 216(b) ("[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); *Athan*, 523 F. Supp. 3d at 970-71; *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, 2019 WL 4574509, at *3 (S.D. Ohio Sept. 20, 2019) ("Sixth Circuit case law indicates that this Court must review settled attorney's fees for reasonableness in common fund cases such as this one") (collecting cases). "A reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (internal quotation marks omitted and alterations adopted).

When awarding attorney's fees in a class action or collective action, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir. 1993). "[T]he appropriate method for use in common fund cases depends upon the circumstances of each case." *Id.* "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Id.*[4] District courts in this district

---

[4] As the Sixth Circuit further explained: "Of course, each method has its respective advantages and drawbacks. The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations

have explained that the percentage-of-the-fund method is the most appropriate "for determining reasonable attorneys' fees in wage and hour cases" and that "33% is typical for attorney's fees in common fund, FLSA collective actions in this District, though a fee award in a particular case may be higher or lower based on unique circumstances in a particular case." *Hebert*, 2019 WL 4574509, at *4, 8 (internal quotation marks omitted) (denying award of attorney's fees of 40% of the common fund as unreasonable under the circumstances).

A "district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee" award. *Rawlings*, 9 F.3d at 516. So "it remains important for the district court to provide a concise but clear explanation of its reasons for the fee award." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 373 (6th Cir. 2014). Therefore, a party seeking an award of attorney's fees needs to sufficiently justify its request with factual and legal support. *See, e.g., id.* at 372-73 (reversing district court's award of attorney's fees).

## IV.     CONCLUSION

For the reasons stated above, the Court **DENIES, WITHOUT PREJUDICE TO REFILING,** the parties' Joint Motion for Approval of Settlement and Stipulation of Dismissal With Prejudice (Doc. No. 17). The Court encourages the parties to submit another joint motion

---

on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation. However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested. The lodestar method's listing of hours spent and rates charged provides greater accountability. In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery. However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Rawlings*, 9 F.3d at 516-17 (internal citation omitted).

whose proposed settlement documents and procedures for effectuating that settlement align with the information set forth in this Order.  *Crawford*, 2008 WL 4724499, at *9 ("[s]ettlement is the preferred means of resolving litigation").  The Court recognizes that the parties have already indicated that, "[i]f the Court does not approve this Agreement, the parties will work in good faith to conform the terms of the Agreement to resolve the Court's objections."  (Doc. No. 17-1 at PageID 85.)

   **DONE** and **ORDERED** in Dayton, Ohio, this Friday, December 3, 2021.

              s/Thomas M. Rose

            _____

             THOMAS M. ROSE
           UNITED STATES DISTRICT JUDGE